UNITED STATES DISTRICT COURRT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:20-CR-00060-GNS

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.

JOHN JAMES SHAUGHNESSY III                                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant's Motion to Revoke Detention Order (DN 15) and Defendant's Motion to Dismiss Count One of the Indictment (DN 16). For the reasons discussed below, the motions are **DENIED**.

### I.  STATEMENT OF FACTS

On June 17, 2020, Defendant John James Shaughnessy III ("Shaughnessy") was indicted on three counts: (1) possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(8), and 924(a)(2); (2) making a firearm in violation of National Firearms Act, 26 U.S.C. §§ 5822, 5861(f), and 5871; and (3) possession of an unregistered firearm in violation, of 26 U.S.C. §§ 5841, 5861(d), and 5871. Shaughnessy's status as a prohibited person arose from a Domestic Violence Order ("DVO") entered against him on March 9, 2020, by the Jefferson Family Court in Jefferson County, Kentucky. (Indictment 1, DN 3). The Family Court entered the order effective for one year after listening to testimony from Shaughnessy, his ex-wife, and her husband. (Def.'s Mot. Dismiss Ex. 1, DN 17). The order explicitly forbade Shaughnessy from possessing firearms. (Indictment 1). One month later, law enforcement responded to a call regarding Shaughnessy and arrested him at a traffic stop. (Aff. Supp. Compl. ¶ 9, DN 1-1). During the arrest, officers found

weapons in his car in violation of his DVO and Shaughnessy was subsequently indicted by the United States. (Aff. Supp. Compl. ¶ 12).

On a motion by the United States pursuant to 18 U.S.C. § 3142(f)(1), the Magistrate Judge held a hearing to determine if Shaughnessy should be detained pending trial on his indictment. (Detention Order, DN 12). The Magistrate Judge ordered Shaughnessy be detained, concluding that "[b]y clear and convincing evidence . . . no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." (Detention Order 2, DN 13). Specifically, at the hearing, the Magistrate Judge heard testimony from the Probation Officer and Shaughnessy's significant other, Kimberly Willey ("Willey"), and heard arguments from counsel. (Detention Hr'g Tr., DN 19). The Magistrate Judge ordered Shaughnessy to be detained pending trial due to his previous violations of court orders, alcohol abuse noted in the pretrial services report, and the presence of numerous weapons and explosive device in violation of his DVO. (Detention Hr'g Tr. 43:3-44:11).

Shaughnessy has moved to dismiss Count One of the Indictment and to revoke the detention order, arguing his DVO could not serve as a predicate offense for Section 922(g)(8). (Def.'s Mot. Dismiss, DN 16; Def.'s Mot. Revoke Detention Order, DN 15). Specifically, he asserts the requirement in Section 922(g)(8) that he have an "opportunity to participate" in the state DVO hearing was violated because he was not allowed to call Willey as a witness. (Def.'s Mot. Dismiss 1, DN 16). Further, Shaughnessy contends he should be released pending trial because: (1) the Magistrate Judge failed to include written findings of fact and reasons; (2) most of the evidence presented at the detention hearing was based on the DVO order which was itself obtained in violation of Shaughnessy's due process rights; (3) the United States has failed to put on clear and convincing evidence that home confinement with GPS tracking is not sufficient to

prevent flight and protect the community; and (4) the COVID-19 pandemic provides mitigating factors in favor of release. (Def.'s Mot. Revoke Detention Order 2). The United States responded to both motions. (Pl.'s Resp. Def.'s Mot. Dismiss, DN 23; Pl.'s Resp. Def.'s Mot. Revoke Detention Order, DN 21). This Court will address each argument in turn.

## II. DISCUSSION

### A. Defendant's Motion to Dismiss Count One

A defendant may move before trial to dismiss an indictment or any count thereof for "failure to state an offense . . . ." Fed. R. Crim. P. 12(b)(3)(B)(v). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). "Generally, motions are capable of determination before trial if they raise questions of law rather than fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976) (citation omitted). The types of defenses generally appropriate for consideration are "former jeopardy, former conviction, former acquittal, statute of limitations, immunity [and] lack of jurisdiction." *United States v. Jones*, No. 1:05-CR-132, 2006 WL 399234, at *1 (E.D. Tenn. Feb. 16, 2006), *aff'd*, 253 F. App'x 550 (6th Cir. 2007) (alteration in original) (citation omitted). In ruling on such motions, this Court must view all factual allegations as true and determine only whether the indictment is valid on its face. *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996) (en banc).

In this motion, Shaughnessy seeks to dismiss Count 1 of his indictment charging him with possession of a firearm while subject to a DVO in violation of Section 922(g)(8). In relevant part, the statute provides:

> It shall be unlawful for any person . . . who is subject to a court order that . . . (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(8).

Specifically, Shaughnessy argues his DVO cannot serve as the predicate offense for the charges under Section 922(g)(8) because he was not afforded a hearing at which he "had opportunity to participate", as required by subsection (A). (Def.'s Mot. Dismiss 1). He contends the hearing "was brought to an abrupt end by the judge with the statement, 'We don't have time for anymore witnesses.'" (Def.'s Mot. Dismiss 1). Although Shaughnessy's ex-wife was able to present testimony from herself and her husband, Shaughnessy states that Willey was not allowed to testify, which resulted in a "failure of a meaningful opportunity to be heard . . . ." (Def.'s Mot. Dismiss 1-2). He cites no authority for the proposition that his inability to present testimony at a DVO hearing from someone besides himself is insufficient under Section 922(g)(8).

The United States responds, relying on *United States v. Baker*, 197 F.3d 211 (6th Cir. 1999), for the proposition that, "even when a particular status arises from a formal proceeding, the nature of that proceeding has no effect on the constitutionality of a § 922(g)(8) prosecution." (Pl.'s

4

Resp. Def.'s Mot. Dismiss 3, DN 23 (quoting *Baker*, 197 F.3d at 217)). As such, the United States asserts that "Shaughnessy had a fair opportunity to participate in the proceeding, but even if he did not have a fair opportunity, it is not this Court's responsibility to analyze the constitutionality of Shaughnessy's hearing. This Court must determine whether Shaughnessy was granted a formal proceeding." (Pl.'s Resp. Def.'s Mot. Dismiss 3). The United States insists that the Jefferson Family Court granted Shaughnessy a formal proceeding because the judge listened to both sides and, not only did Shaughnessy have an opportunity to participate, he testified on his own behalf. (Pl.'s Resp. Def.'s Mot. Dismiss 3).

Insofar as the United States rests its argument on the constitutionality of the DVO hearing, it misses the mark. The United States cites *Baker* for the proposition that collateral attacks on the constitutionality of predicate offenses are generally impermissible. 197 F.3d at 217. Shaughnessy, however, has made no mention of the United States Constitution. (Def.'s Mot. Dismiss 1-2). Rather, he only has only referenced language of Section 922(g)(8) and claimed he was not afforded a meaningful opportunity to participate, as the statute requires. (Def.'s Mot. Dismiss 1). Thus, Shaughnessy questions only the legal sufficiency of the hearing under the statute.

The United States is correct insofar as it argues the underlying hearing was sufficient according to the requirements of Section 922(g)(8) because Shaughnessy had an opportunity to testify as squarely addressed as a matter of first impression in *United States v. Calor*, 340 F.3d 428 (6th Cir. 2003). The defendant in *Calor* was subjected to a DVO after an initial Emergency Protective Order ("EPO") was entered against him. *Id.* at 429. Calor was then summoned to appear at a hearing to respond to the allegations, but attended the hearing and only requested an adjournment. *Id.* Testimony was not heard; nor was evidence presented. *Id.* At the end of the hearing, the adjournment was granted, and a second EPO was issued with a term restricting the

5

possession of firearms. *Id.* Calor violated the second EPO and was then prosecuted for violating Section 922(g)(8). *Id.* at 430. Like Shaughnessy, Calor argued the second EPO could not serve as the predicate offense because it was entered without a hearing on the merits. *United States v. Calor*, 172 F. Supp. 2d 900, 903 (E.D. Ky. 2001), *aff'd*, 340 F.3d 428 (6th Cir. 2003).

The Sixth Circuit found the requirement of an "opportunity to participate" was not ambiguous. *Calor*, 340 F.3d at 431. The court held the second EPO issued after the request for an adjournment satisfied the hearing requirement of Section 922(g)(8) "because Calor *could have* presented reasons why the court should not enter an order finding that he posed a credible threat to the safety of his wife or child at the . . . . proceeding." *Id.* (emphasis added). Calor had an "opportunity to participate" as required by Section 922(g)(8) because he had the "'*opportunity* to present reasons, either in person or in writing, why proposed action should not be taken.'" *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (emphasis added)). The court sought to avoid "embellish[ing] the hearing requirements explicitly set forth in § 922(g)(8)" and held that "[the fact] that Calor elected to waive his opportunity to participate does not alter his status under § 922(g)(8)." *Id.*

The court in *Calor* found support for its statutory interpretation in the Seventh Circuit case *United States v. Wilson*, 159 F.3d 280 (7th Cir. 1998). *Calor*, 340 F.3d at 431. In *Wilson*, the court held a DVO entered against a *pro se* defendant was sufficient even though the proceeding consisted only of the judge explaining the order and asking the defendant if he could live by its terms. *Wilson*, 159 F.3d at 290. The Seventh Circuit held the hearing was sufficient because the defendant *could have* told the judge he disagreed with the order and given reasons why. *Id.* The Ninth Circuit adopted this reasoning with a rule that "prosecution must only show an opportunity to participate; that is, a proceeding during which the defendant *could* have objected to the entry of

6

the order or otherwise engaged with the court as to the merits of the restraining order." *United States v. Young*, 458 F.3d 998, 100 (9th Cir. 2006). It is, therefore, the "opportunity" to participate that dictates the hearing requirement of Section 922(g)(8), not the actual participation. Ultimately, "[t]he nature of the proceeding is not what is important under the statute. It is the status of the individual as one subject to a domestic violence order." *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999).

In this instance, Shaughnessy was provided with more than a mere opportunity to participate; he actually did participate. The DVO hearing was attended by Shaughnessy; Willey; his ex-wife, who was seeking the DVO; and her husband. (Def.'s Mot. Dismiss Ex. 1, DN 17). The substance of the hearing lasted forty-two minutes. Shaughnessy's ex-wife and her husband testified jointly for roughly ten minutes and were cross-examined by Shaughnessy's attorney for well over twenty minutes. (Def.'s Mot. Dismiss Ex. 1, at 8:42-33:28). Shaughnessy then testified for ten minutes, plus cross-examination. (Def.'s Mot. Dismiss Ex. 1, at 34:11-34:51:29). After Shaughnessy's testimony, the judge asked, "Anything else?" and the ex-wife's counsel responded, "No Judge." (Def.'s Mot. Dismiss Ex. 1, at 51:30-51:32). Shaughnessy's counsel remained silent. (Def.'s Mot. Dismiss Ex. 1, at 51:30-51:32). After a slight pause, the judge entered the order, stating, "Well, we don't have time for anymore witnesses. Unfortunately, Mr. Shaughnessy, by the preponderance of the evidence I find [the plaintiff] to be more credible than you. Therefore, I'm gonna [sic] enter an order in her favor, but I'm only gonna [sic] do it for a year. Okay?" (Def.'s Mot. Dismiss Ex. 1, at 51:33-52:19). The judge concluded the hearing by asking Shaughnessy, "Sir, where are all your weapons? Where are they?" (Def.'s Mot. Dismiss Ex. 1, at 53:56-53:59). Shaughnessy, responded, "As far as I know, the police have them, Your Honor." (Def.'s Mot. Dismiss Ex. 1, at 53:59-54:01). The judge responded, "Okay, let's keep it that way.

7

Okay?" (Def.'s Mot. Dismiss Ex. 1, at 54:01-54:04). Finally, the judge stated, "If there's nothing else, we're done." (Def.'s Mot. Dismiss Ex. 1, at 54:14-54:15).

This hearing amply satisfied the minimal requirements of Section 922(g)(8). Not only was Shaughnessy given the *opportunity* to present reasons why the court should not enter the DVO, he actually testified for nearly seventeen minutes of the forty-six minute hearing, in addition to cross-examining opposing witnesses. *See Calor*, 340 F.3d at 431. If a hearing without evidence was sufficient in *Calor*, Shaughnessy's hearing where he testified and was able to cross-examine opposing witnesses cannot be insufficient simply because he was not allowed to present evidence he now claims should have been presented then.

Ultimately, Shaughnessy was not only given a hearing with an opportunity to participate, but he did participate in the DVO hearing. He had more opportunity to participate in a hearing than other defendants challenging their charge under Section 922(g)(8), and as such, Shaughnessy's motion to dismiss is denied.

    **B.**     <u>**Defendant's Motion to Revoke Detention Order**</u>

The district court reviews a magistrate judge's order of detention *de novo*. *See United States v. Yamini*, 91 F. Supp. 2d 1125, 1127 (S.D. Ohio 2000) (explaining that, although the Sixth Circuit has not mandated a particular standard of review, "[t]he majority view appears to favor . . . *de novo* review of detention orders . . . ." (citations omitted)). When no presumption of detention applies, the court must determine whether any release conditions can assure the safety of any other person and the community. *See* 18 U.S.C. § 3142(g). Specifically, the Court should consider: (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person;" and (4) "the nature

and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

First, Shaughnessy argues the detention order should have included written findings of fact. Specifically, he claims the order "made findings by checking boxes on the detention form, with no other written findings, that by clear and convincing evidence, no conditions of release will reasonably guarantee the safety of any other person and the community." (Def.'s Mot. Revoke Detention Order 2). While Shaughnessy is correct that 18 U.S.C. § 3142(i) does require the Magistrate Judge to make written findings, the Magistrate Judge has done so here. The Detention Order shows that the Magistrate Judge found "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." (Detention Order 2). Furthermore, the Magistrate Judge listed the reasons for detention as (1) "[p]rior criminal history," (2) "[p]articipation in criminal activity while on probation, parole, or supervision," (3) "[h]istory of violence or use of weapons", and (4) "history of alcohol or substance abuse". (Detention Order 2). While admittedly formatted as a checklist, the Order sets out in written form the findings and reasons for detention pending trial.

Shaughnessy further contends that his DVO was obtained in violation of due process. (Def.'s Mot. Revoke Detention Order 2). Shaughnessy claims that much of the evidence against him at the detention hearing was derived from the DVO and that because the order was obtained in violation of due process, it "cannot provide the basis for the presumptionless pre-trial detention of Mr. Shaughnessy." (Def.'s Mot. Revoke Detention Order 2). He is incorrect, however, because "even when a particular status arises from a formal proceeding, the nature of that proceeding has no effect on the constitutionality of a § 922(g)(8) prosecution." *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999). More importantly, the merits of Shaughnessy's defense to prosecution

are irrelevant at this stage. The Court's statutory obligation to consider the weight of evidence against a defendant in a detention hearing is focused on evidence of *dangerousness*, not guilt. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). In fact, the Magistrate Judge stated on the record that she recognized the underlying legal dispute, and held "but for purposes of determining detention, this court is concerned with the circumstances surrounding Mr. Shaughnessy's arrest over a month after a state court had ordered him not to be in possession." (Detention Hearing Tr. 43, DN 19). The Sixth Circuit has recognized "[r]egardless as to how [defendant] became subject to a domestic violence protection order, he attained that status and thus must comply." *Baker*, 197 F.3d at 217. Shaughnessy's challenge to his underlying DVO does not alter the circumstances justifying detention.

Shaughnessy argues next that the government has failed to put on clear and convincing evidence that home confinement with GPS tracking is not sufficient. (Def.'s Mot. Revoke Detention Order 2). While contending that "much of this 'clear and convincing evidence' is likely connected with a state court emergency protection order against Mr. Shaughnessy", the Magistrate Judge expressed other concerns including the presence of "not one but a number of weapons, including an explosive device" at the scene of arrest and that Shaughnessy was driving under the influence of alcohol at the time, leading to a "potentially deadly combination for him and anyone in the community." (Def.'s Mot. Revoke Detention Order 2; Detention Hr'g Tr. 43:15-19). Further, the Magistrate Judge did not find Willey to be a sufficient guardian. (Detention Hr'g Tr. 44:3-7).

While tasked with conducting a *de novo* review of the Magistrate Judge's findings, this Court agrees with the findings from the detention hearing that the United States presented clear and convincing evidence that "no condition or combination of conditions of release will reasonably

assure the safety of any other person and the community." *See* 18 U.S.C. § 3142(g). First, it appears Shaughnessy was driving under the influence of alcohol on the day of his arrest. (Compl. ¶ 11). Shaughnessy was observed by officers crossing the center yellow line multiple times before driving off the road and side-swiping a trash can. (Compl. ¶ 9). Second, just moments later, officers found five pistols, two rifles, one shotgun, and an explosive device in his car. (Compl. ¶ 12). These facts unquestionably present a "potentially deadly combination . . . ."

Willey's conduct throughout this process provided scant assurance that she would guarantee Shaughnessy's compliance with any pretrial release orders. Two weeks after Shaughnessy was prohibited from possessing firearms, Willey purchased a handgun and allowed Shaughnessy to travel with her to pick it up. (Detention Hr'g Tr. 22:25-23:6). Likewise, the morning of Shaughnessy's arrest, Willey arrived at his residence claiming to have brought him a can of dip, but later claimed she was there to take custody of the firearms found in Shaughnessy's car. (Detention Hr'g Tr. 20:24- 21:24). That morning when Willey arrived on the scene, officers requested that she contact Shaughnessy. (Detention Hr'g Tr. 21:25-22:2). Willey claimed she needed to drive to the end of the property for cell service, but when she got to the end of the driveway, she instead drove away. (Detention Hr'g Tr. 21:25-22:12).

Contrary to Shaughnessy's arguments, this Court can consider evidence of violence presented at his DVO hearing. 18 U.S.C. § 3142(f)(2) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."). Regardless of the factual disputes, the Indictment alleges that Shaughnessy violated a court order. (Indictment 1-2, DN 3). An indictment by itself establishes probable cause to believe that a defendant committed the crime with which he is charged. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Ultimately, it is the nature of Shaughnessy's charge that calls

into question his claim that he can be released on conditions that would reasonably assure safety to others. In this regard, the United States has met its burden of showing by clear and convincing evidence that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." *See* 18 U.S.C. § 3142(g).

Finally, Shaughnessy contends the COVID-19 pandemic should be included in the "calculus regarding risk to the community . . . ." (Def.'s Mot. Revoke Detention Order 2). This Court recognizes the impact of COVID-19. In *United States v. Taylor*, No. 5:19-CR-192-KKC-MAS, 2020 WL 1501997 (E.D. Ky. Mar. 26, 2020), however, the court recognized, "the BRA and its factors do not provide for any such consideration." *Id*. at *4. "[T]he factor set forth in 3142(g)(4) focuses on 'the nature and seriousness of the danger to any person or the community that would be posed by the person's release,' not the danger to the defendant upon his detention." *Id*. Although the factor set forth in Section 3142(g)(3)(A) does focus on a defendant's personal characteristics, including his health, Shaughnessy has not claimed poor health or a heightened risk exposure through detention. *See id*.

Shaughnessy claims "Attorney General Barr has instructed courts regarding pretrial detention determinations[,] [that] '[Y]ou should now consider the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic.'" (Def.'s Mot. Revoke Detention Order 2). Attorney General Barr, however, lacks authority to direct this Court on the considerations for pretrial detention. 18 U.S.C. § 3412(g) ("The judicial officer shall . . . ."); *see also Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792). Instead, the Attorney General was providing direction to the United States Justice Department on factors to consider when seeking pretrial detention. The Attorney General further stated that when prosecutors "believe a defendant poses a risk to the safety of any person or the community at large, [they] should continue

12

to seek remand as zealously today as [they] would have before the pandemic began . . . ." (Def.'s Mot. Revoke Detention Order Ex., at 1, DN 15-2). Having found Shaughnessy poses a risk to the safety of his community, this motion is denied.

### III. CONCLUSION

For the reasons discussed above, Defendant's Motion to Revoke Detention Order (DN 15) and Defendant's Motion to Dismiss Count One of the Indictment (DN 16) are **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

September 8, 2020

cc: counsel of record